BARNARD v. BROWN.

1. TITLE TO LAND—VENDOR AND PURCHASER—CONTRACTS.
    A purchaser under a land contract which requires the vendor
    to execute and deliver a good and sufficient warranty deed of
    the land, "so as to convey the same in fee, and unincum-
    bered," is entitled merely to a good and marketable title, and
    he cannot demand a title perfect upon the record.

2. SAME—MARKETABLE TITLE—WHAT CONSTITUTES.
    A marketable title is one which is free from incumbrance, and
    which is of a character to assure to the vendee the quiet and
    peaceable enjoyment of the property.

3. SAME—ADVERSE POSSESSION.
    A title by adverse possession is a marketable title.

Error to Saginaw; Kendrick, J. Submitted February
9, 1897. Decided April 27, 1897.

*Assumpsit* by Arthur Barnard against Addison T.
Brown and another to recover the balance due upon a
land contract. From a judgment for plaintiff, defendants
bring error. Affirmed.

*William H. Sweet* (*G. W. Davis*, of counsel), for
appellants.

*Hanchett & Hanchett*, for appellee.

LONG, C. J. The plaintiff contracted in writing, May
26, 1890, that, when the defendants should pay him the
full sum of $5,400, he would execute and deliver to them
a warranty deed, so as to convey to them in fee, unin-
cumbered, the title to the lots described in the con-
tract. Defendants made payments thereon aggregating
$3,196.72. The balance of the moneys becoming due,
plaintiff tendered a deed to the defendants, and de-
manded the balance of the contract price, which was re-

fused, whereupon plaintiff brought this action, and on the trial in the court below recovered damages. On the trial the plaintiff made a *prima facie* case by introducing the contract, and showing the default of defendants in making the payments provided for therein, and a failure to pay the taxes, and that nothing further had been paid up to the time of suit, and that tender had been made of the deed, and a demand for payment of the balance due on the contract. Defendants then sought to prove that the record title of plaintiff was defective, and now insist that the title is defective. This question will be considered later.

It appeared that the plaintiff's title depended largely upon adverse possession for a continuous period of more than 15 years. His father, Newell Barnard, was shown to have occupied the premises continuously from about 1870 down to the time of his death, which occurred July 9, 1883. He left no will, and the only members of his family were his son, Arthur, the plaintiff here, and his daughter, Lelia, both of whom were of age. It was shown that the plaintiff had been in possession in behalf of his father prior to his death, and that he continued in possession after his death for himself and for his sister until he acquired his sister's interest, and had continued in possession down to the time he made the contract with the defendants. The records of the probate court produced in evidence show that all the property of the estate which remained after the payment of the debts was assigned to Arthur and Lelia as sole heirs of Newell Barnard; that on February 16, 1885, Lelia conveyed her interest in this and in all real property in Michigan to her brother; that all this property, except a small part, was assessed to the Barnards, and from 1870 down to the time of the contract it was known as the "Barnard Property." Testimony was also offered showing that the possession of Barnard was open, notorious, hostile, and continuous during all those years.

Defendants' contention was that the burden of proof

was upon the plaintiff to show an absolute title, and that a title obtained and held by adverse possession was not such a title as the contract called for. Defendants requested the court to charge upon that subject as follows:

"The defendants, under the law and by their contract, are entitled to a good, marketable title to the land, and every part thereof; and the plaintiff, having only attempted to show a title claimed to have been acquired by adverse possession for a period of 15 years,—a title which can be determined or established only by judicial inquiry and decision, dependent wholly upon facts resting in parol,—has not shown such a title as his contract called for, or such as the defendants are bound to accept; and plaintiff cannot recover."

The court below, while acceding to the fact that the defendants were entitled to a good and marketable title, said to the jury:

"A marketable title is one of such character as to assure to the vendee a peaceable enjoyment of the property. If you find that the plaintiff and his father were in actual, visible, continuous, notorious, distinct, and adverse possession of the property sold to the defendants for a period of 15 years and more prior to the time that the contract was made with the defendants, the plaintiff would be the absolute owner of the property. If you should find that these elements have been complied with, and that he has been in possession continuously by himself and his ancestors, he is the absolute owner of the property, as much as though he had record title, and could convey such title as the defendants had a right to receive under this contract."

The court was not in error in this charge. The contract provides that—

"Forthwith, after the full payment of the purchase money, interest, and taxes, and performance of this agreement by the second parties, the said party of the first part shall execute or cause to be executed and delivered to the parties of the second part a good and sufficient warranty deed of said land, so as to convey the same in fee, and unincumbered, to said parties of the second part," etc.

By this contract the plaintiff was not to convey a title which was perfect upon the record, but was bound to convey a title in fee and unincumbered, and therefore defendants were entitled to a marketable title. A marketable title, however, is one of such character as should assure to the vendee the quiet and peaceable enjoyment of the property, and one which is free from incumbrance. We think it is well settled that when such a title as that is obtained by adverse possession it is sufficient to meet the require-ments of such a contract as this. In *O'Connor* v. *Huggins*, 113 N. Y. 521, after describing the features of adverse possession shown by the plaintiff, the court said:

"There is no proof nor pretense of any other title to the property, lying either in grant or in claim; nor does anything appear to disturb the conclusiveness of the presumption of a valid grant which arises from an exclusive and uninterrupted possession of the property, under a claim of title founded on a conveyance, for a period extending far beyond the length of time mentioned in the statute of limitations. Such a presumption will always displace objections based on flaws in the proceedings in which the title has had its source, and protect the title from being injured or affected by their disclosure."

In *Foreman* v. *Wolf*, 29 Atl. 837, the supreme court of Maryland say:

"It appears from the record that the appellee has been in the exclusive possession of the property in dispute for over 20 years, and, even if the objection urged by the appellant was tenable, the title of the appellee would be a good and marketable one by adverse possession, under the statute of limitations. It is well settled that a title by adverse possession for over 20 years, where the only persons who could claim were all under no disability, is marketable, and such as a court of equity will compel a purchaser to take."

In *Tewksbury* v. *Howard*, 138 Ind. 110, it was claimed that a title obtained by adverse possession is not a marketable one. In answer to this, it was said by the court:

"The principal argument is that the decree quieting title came too late to support this suit, but incidentally it

is said that a title by adverse possession is not a marketable title. If a marketable title, it is manifest that the decree so alleged was only in confirmation of the title so held, and the tardiness in procuring it would not defeat the action. Title by adverse possession is as high as any known to the law. * * * A marketable title cannot be said to be more."

In the recent case of *Elder* v. *McClaskey*, 17 C. C. A. 251, 70 Fed. 529, was involved a title by adverse possession under the Ohio statute. Of that Mr. Justice Taft said:

"Under the construction put upon this statute by the supreme court of Ohio, an open, notorious, exclusive, and adverse possession of land for 21 years, with or without color of title, whether continuous in the first possessor or tolled in persons claiming under him, and whether with or without knowledge of the existence of a better title, confers upon the original possessor, or those claiming under him, an indefeasible title in fee;" citing *Paine* v. *Skinner*, 8 Ohio, 159, and several other Ohio cases.

It is well settled in Michigan that title by adverse possession need not be based upon color of title. *Campau* v. *Lafferty*, 50 Mich. 114; *Sanscrainte* v. *Torongo*, 87 Mich. 69. That a title acquired by adverse possession is sufficient to meet a contract of such character as should assure to the vendee a quiet and peaceable enjoyment of the property, and one which is free from doubt, is also settled in *Bicknell* v. *Comstock*, 113 U. S. 149; *Leffingwell* v. *Warren*, 2 Black, 599; *Murray* v. *Harway*, 56 N. Y. 337; *Shriver* v. *Shriver*, 86 N. Y. 575; *Ballou* v. *Sherwood*, 32 Neb. 666; *Schall* v. *Railroad Co.*, 35 Pa. St. 191; *Moore* v. *Luce*, 29 Pa. St. 260 (72 Am. Dec. 629); *Hodges* v. *Eddy*, 41 Vt. 485 (98 Am. Dec. 612); *Crowell* v. *Druley*, 19 Ill. App. 509; *Ottinger* v. *Strasburger*, 33 Hun, 466; *Simson* v. *Eckstein*, 22 Cal. 580; *Clancey* v. *Houdlette*, 39 Me. 451; *Walker* v. *Ray*, 111 Ill. 315; *De Long* v. *Mulcher*, 47 Iowa, 445; *Thacker* v. *Booth*, (Ky.) 6 S. W. 460; *Lurman* v. *Hubner*, 75 Md. 268; *Ford* v. *Schlosser*, (Com. Pl.) 34 N. Y. Supp. 12; 1 Am. & Eng. Enc. Law (2d Ed.), 883, and cases cited;

*Dupont* v. *Starring*, 42 Mich. 492; *Bunce* v. *Bidwell*, 43 Mich. 542.

It is contended, further, that the plaintiff promised to furnish an abstract of title, and that the contract implies that a perfect record title was to be given. The contract contains nothing on the subject of an abstract, or the kind of title to be given. We have already recited what the conveyance was to be, and, in order to fulfill the conditions of the contract, it was not necessary that a perfect record title should be conveyed.

Some other questions are raised by this record, which we do not deem important to discuss. They are fully answered in the brief of counsel for plaintiff, and, inasmuch as there was a full and fair trial of the questions raised, and the court below having stated the law correctly upon those questions, we think it will not benefit counsel or parties to enter upon a discussion of them.

The judgment must be affirmed.

The other Justices concurred.