INGERSOLL ENGINEERING & CONSTRUCTING CO. v. CROCKER.

(Circuit Court of Appeals, Sixth Circuit. December 7, 1915.)

No. 2614.

1. COURTS ☾═367—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.

Upon the question of the sufficiency of a title to real estate, the decisions of the Supreme Court of the state fix a rule of property which the federal courts will follow.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. ☾═367.]

2. VENDOR AND PURCHASER ☾═102—RIGHTS OF PARTIES TO CONTRACT—RESCISSION BY VENDOR.

Where by reason of an outstanding mortgage a vendor could not make the clear title required by his contract and the purchaser refused to make payment, an immediate declaration of forfeiture by the vendor, on discharging the mortgage, without previous notice to the purchaser, was ineffective; but the commencement of an action for damages by the purchaser for breach of contract operated as an acceptance of the tendered forfeiture and rendered it effective from that date.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 175–177; Dec. Dig. ☾═102.]

3. VENDOR AND PURCHASER ☾═130—TITLE OF VENDOR—EFFECT OF CONDITION SUBSEQUENT IN PRIOR CONVEYANCE—"INCUMBRANCE"—"MARKETABLE TITLE."

A deed containing an express condition that "said premises shall never be occupied or used by or in any trade or business such as, if launched or started in localities in cities already thickly populated and devoted to first-class residences, are held to be nuisances," upon violation of which the title should revert, creates a condition subsequent, which under the

☾═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

law of Michigan constitutes an apparent or prima facie incumbrance, and renders the title of the grantee nonmarketable.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245–247; Dec. Dig. ☞130.

For other definitions, see Words and Phrases, First and Second Series, Incumbrance; Marketable Title.]

4. VENDOR AND PURCHASER ☞130—TITLE OF VENDOR—EFFECT OF CONDITION SUBSEQUENT IN PRIOR CONVEYANCE.

Such condition, if in force, would clearly render the title nonmarketable as between a vendor and a purchaser who desired the property, as was known to the vendor, for a use which would constitute a nuisance in a locality "devoted to first-class residences."

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245–247; Dec. Dig. ☞130.]

5. DEEDS ☞166—CONDITIONS SUBSEQUENT—DISCHARGE BY SUBSEQUENT CONVEYANCE BY GRANTEE.

The rule that the right of re-entry for breach of a condition subsequent is extinguished, if the grantor afterward and before the breach conveys to another, has relation only to a conveyance of the very property transferred by the deed carrying the condition.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 522–525; Dec. Dig. ☞166.]

6. DEEDS ☞156—CONDITIONS SUBSEQUENT—PERSONS ENTITLED TO ENFORCE —"CONDITION MERELY NOMINAL."

Where the owner of a tract of land subdivided it into blocks and lots, a large number of which he sold and conveyed by deeds containing a condition subsequent, the grantees acquired the right to enforce the condition as to any other lot in their vicinity, and the fact that the original grantor disposed of all his interest did not render the condition "merely nominal," within the meaning of Comp. Laws Mich. 1897, § 8828, which provides that such conditions may be disregarded.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 496–499; Dec. Dig. ☞156.]

7. DEEDS ☞166—CONDITIONS SUBSEQUENT—RELEASE OR WAIVER—QUESTIONS OF FACT.

Whether a use of property was in violation of a condition subsequent in a prior deed, and whether, if so, the continuance of such use for the statutory period would bar all persons entitled to enforce such condition, as well as whether the condition had been waived and abandoned by everybody concerned, all held questions of fact, not to be determined as matter of law.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 522–525; Dec. Dig. ☞166.]

8. DEEDS ☞166—CONDITIONS SUBSEQUENT—DISCHARGE OR LOSS OF RIGHTS.

A grantee, who accepts a deed carrying a condition subsequent, cannot free the estate by omitting the condition when he deeds it away, although its omission from so many subsequent deeds as to be general or common may have a bearing on the question of fact whether there has been an abandonment of the condition by those interested in its benefits.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 522–525; Dec. Dig. ☞166.]

9. DEEDS ☞149—CONDITIONS SUBSEQUENT—VALIDITY.

A state statute against perpetuities does not affect the validity of a condition subsequent in a deed as to the use of the premises, which runs

with the land, but which can be released at any time by the joinder of all persons entitled to its benefits.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 451, 479; Dec. Dig. ☞149.]

10. COURTS ☞493—PRIORITY OF JURISDICTION—LEGAL AND EQUITABLE JURISDICTION.

Complainant contracted to sell to defendants certain real estate, for which defendants refused to complete payment on the ground that the title was not such as required by the contract. Complainant declared a forfeiture and re-entered, whereupon defendants brought an action at law for damages for breach of the contract by failure of complainant to furnish good title. Pending such action, complainant brought suit in equity to cancel the contract, which was of record, as a cloud upon his title. The rights of the parties depended upon whether complainant had tendered a marketable title, which involved questions of both law and fact. *Held* that, while the court of equity acquired jurisdiction so far as related to the cancellation of the contract, such jurisdiction extended only to an incident of the main controversy which involved questions of title and damages proper to be tried by a jury, and that it should have awaited the trial of such issues in the court of law which first acquired jurisdiction, instead of assuming to determine the entire controversy.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1346–1352; Dec. Dig. ☞493.]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by Martin Crocker against the Ingersoll Engineering & Constructing Company. Decree for complainant (205 Fed. 99), and defendant appeals. Reversed.

G. K. Wright, of Pittsburgh, Pa., for appellant.

Martin Crocker, of Mt. Clemens, Mich., and F. D. Eaman, of Detroit, Mich., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. The appellee filed a bill in equity in one of the state courts in Michigan, making the Ingersoll Company defendant, and alleging that Mr. Crocker, as vendor, had made in 1898 an executory contract of sale to the Ingersoll Company, as vendee, covering part of block 1, Dickinson's addition to the city of Mt. Clemens; that the vendee had failed to perform the conditions and thereupon the vendor had forfeited the contract and re-entered; that the contract had been placed upon record and constituted a cloud on vendor's title. The bill prayed that this cloud might be removed and the vendee enjoined from interfering with vendor's possession. The Ingersoll Company removed the case to the court below, in which, after some interlocutory proceedings, the company answered, claiming that the vendor's title proved to be bad, and that defendant had therefore been justified in refusing to pay the remainder of the price. The answer also set up that, before the bill in equity was filed, the Ingersoll Company, as plaintiff, had begun a case at law in the court below against Mr. Crocker to recover damages because he had been unable to make a

good title, and claiming, as such damages, the portion of the purchase price which had been paid and the value of the structures which defendant had erected on the premises and which had been taken over by the vendor when he retook possession. The answer insisted that the prior suit at law involved the whole controversy, and that the equity case ought to be stayed until the suit at law was determined; but the District Court declined to do so, and a final hearing was had upon proofs taken. This resulted in a decree finding that the vendor's title was sufficient, and that the vendee and not the vendor had broken the contract, and adjudging that unless within 30 days the vendee paid the remainder of the purchase price all the vendee's rights under the contract should be treated as forfeited and that the recorded contract, as a cloud upon Mr. Crocker's title, should be canceled. From this decree, defendant brought this appeal.

The meritorious questions involved are two: (1) Was Mr. Crocker's title good enough, so that his deed would have satisfied his agreement to convey a "good and sufficient title"? (2) Should the question of title and the dependent question of who broke the contract have been left to the law case for determination? Although we conclude, for reasons hereafter stated, that the second question should be answered in the affirmative, yet, since the court of equity had some measure of jurisdiction, and the legal questions have been fully argued, and sending the subject-matter back to be tried at law would only result in bringing the same questions here again, we think it proper on this appeal to consider those matters which have been thus presented, and which, clearly, must upon the further trial be treated as questions of law.

[1] 1. The case involves title to real estate in Michigan, and it has often been held by this court that upon such a matter the decisions of the Supreme Court of the state fix a rule of property which the federal courts will follow. In Michigan, the rule has long been established that such a covenant as was contained in the contract here involved—viz. to execute and deliver a good and sufficient conveyance in fee simple, free and clear of all liens and incumbrances—imposes on the vendor an obligation only to convey a marketable, and not a perfect, title (Barnard v. Brown, 112 Mich. 452, 70 N. W. 1038, 67 Am. St. Rep. 432); and in the same case it is held that a title acquired by adverse possession is, or may be, a marketable title. All alleged defects in Mr. Crocker's title, not hereafter specially mentioned, we think are clearly either too inconsiderable to make it less than marketable or else are sufficiently cured by the long possession which concededly had been held by the vendor and his grantors.

[2] 2. A controversy between the parties as to whether the title was good came to a sharp issue in October, 1911. At that time there was an undischarged mortgage against the property, and we assume that this made the title then nonmarketable. On December 14th Mr. Crocker discharged the mortgage; but without notifying the vendee of this act he declared a forfeiture and took possession. We cannot think this forfeiture was effective, or at least that it should be so regarded in a suit in equity brought by the vendor. Fair dealing re-

quired notice that the mortgage had been paid, and reasonable opportunity for the vendee to reconsider its determination not to pay. Hence the vendor's action amounted only to a declaration of his intention and desire to forfeit, and it continued to have only this force until, on March 30th, the vendee commenced the suit for damages because the vendor had no marketable title to convey. This was clearly an acceptance of the tendered forfeiture, which must take complete effect from that date. The mortgage had then been paid, and the vendee knew it, and could not thereafter, in that suit or in this, rely upon a defect which had then ceased to exist.

[3] 3. The next alleged defect is the most serious, and to appreciate its force further facts must be stated. In 1881 Mt. Clemens was a town of considerable size, lying mainly along the outside or convex side of a sharp curve of the Clinton river, a stream which is narrow, but navigable for the intervening few miles to Lake St. Clair. The chief business and residence districts of the town were immediately along and opposite this bow, while upon the other side, and separated only by the width of the river, was a low-lying district having the river practically upon three sides. At the time named, the greater part of this parcel which was so surrounded by the river and projected into the thickly-settled part of the city, but which was itself vacant, was owned by Mr. Don M. Dickinson, and was by him platted into blocks and lots, as Dickinson's addition. Block 1 was situated at the center of the bow, and so was nearest to the business district; and at both ends of the block, bridges crossed the river. Judging by the map, this block extends to within about 200 feet of the main part of the main business street. The deed from Mr. Dickinson to Mr. Crocker's grantor contained this provision:

"It is made an express condition of this conveyance that said premises shall never be occupied or used by or in any trade or business such as if launched or started in localities in cities already thickly populated and devoted to first-class residences are held to be nuisances; and upon violation of this condition, the said premises, and the title thereof, with all improvements thereon, shall revert to party of the first part, their heirs, representatives and assigns."

No one doubts the prima facie validity of this stipulation, or that it would at once be effective as a condition subsequent, a breach of which would give the right of re-entry; and obviously such a condition would affect the title in the hands of all subsequent grantees, without regard to whether the condition was repeated in the deeds in the intervening chain of title. Blanchard v. R. R., 31 Mich. 43, 18 Am. Rep. 142; Batley v. Foerderer, 162 Pa. 460, 29 Atl. 868. The Michigan decisions adopt the general rule that a title is not marketable, if there is any outstanding incumbrance or claim—and a condition subsequent is an incumbrance—which would make a purchaser of ordinary business prudence unwilling to accept the title. Allen v. Atkinson, 21 Mich. 351, 361; Barnard v. Brown, supra. Clearly, this condition in this deed creates an apparent or prima facie incumbrance which seems to make the title nonmarketable; and we come to a consideration of the special reasons why the condition is thought either never to have been, or to have ceased to be, thus operative.

[4] 4. It is said that a condition which forbids the maintenance of a nuisance is only a declaration of a burden already imposed by law, and so does not constitute an incumbrance. This position is based upon three New York cases, Clement v. Burtis, 121 N. Y. 708, 24 N. E. 1013, Rowland v. Miller, 139 N. Y. 93, 34 N. E. 765, 22 L. R. A. 182, and Floyd v. Clark, 7 Abb. N. C. 136. Even if these cases may be accepted as sustaining the proposition as applicable to a condition as well as to a covenant, the condition now involved is essentially different. What is and what is not a nuisance depends largely upon the character of the neighborhood, and, if we except certain things which are nuisances always and everywhere, the question whether a particular use constitutes a nuisance depends on the surroundings. The draftsman of this condition clearly intended to eliminate any such question of doubt. He made the restriction apply, not to nuisances generally, but to any business which would be considered a nuisance if started in a city and in a locality "already thickly populated and devoted to first-class residences." The obvious intention was to fix for this locality, not the changing standard which might be appropriate to the vagaries of city growth, but the hard and fast standard of a first-class residence district.

It might be argued that restrictions intended to maintain a high-class residential neighborhood would increase rather than diminish the value of the property so long as the neighborhood maintained that character, and hence that such a restriction would not injuriously affect the marketability of the title; but even that argument will not reach the present case. It appears without dispute that this district did not develop as was planned; that the residences built thereon were of a medium class; that for many years a factory, coal and lumber yard, boarding houses, and places of public entertainment had been maintained on block 1, or within the district covered by restrictions like that in this deed, and that just outside the district and closely adjacent to this parcel were large factories of different kinds. It is not to be doubted that, when the Crocker-Ingersoll contract was made, block 1 was better adapted to business purposes than to first-class residences; and this is emphasized by the fact that Ingersoll contracted to purchase the property for the purpose of building upon it a roller coaster or switchback railroad, and using it as a public amusement park. This, certainly, would not be, by law, a nuisance if in a suitable location; it surely—or at least probably—would be, among "first-class residences." If the restrictive condition was in force, it is clear enough that the property could not be appropriated to the lawful use which the purchaser intended, and hence that the condition was an incumbrance which made the title insufficient.

[5] 5. Appellee invokes the rule that the right of re-entry for breach of condition subsequent is extinguished, if the grantor afterwards, and before the breach, conveys to another. Rice v. Boston, etc., R. R., 12 Allen (Mass.) 141; Hooper v. Cummings, 45 Me. 359. It is doubtful whether this rule survived its reason, which was largely destroyed by the statutes making rights of action assignable (Underhill v. Saratoga, etc., R. R., 20 Barb. [N. Y.] 455, 461); but it has relation only

to a later conveyance of the very property transferred by the deed carrying the condition, whereby the grantor loses that interest which bears some analogy to a reversion, and there does not appear to have been any later deed by Mr. Dickinson covering the parcel now in question.

[6] 6. It was made to appear that Mr. Dickinson, the grantor, had sold all the property which, at the time of the deed, he owned adjoining or anywhere in the vicinity, and, hence it is said that neither the grantor nor his heirs had any interest in enforcing the condition, and that, if there is no person competent to enforce the condition, it no longer constitutes a substantial burden. This contention perhaps confuses the difference between a condition and a covenant, but it rests on the supposed application of the Michigan statute (section 8828, C. L. 1897) providing that a failure to perform "merely nominal" conditions not of "substantial benefit" shall not work a forfeiture.[1] In Barrie v. Smith, 47 Mich. 131, 10 N. W. 168, and Smith v. Barrie, 56 Mich. 314, 22 N. W. 816, 56 Am. Rep. 391, it was held that the grantor, at the time of the deed, must own other lands to be benefited by such a condition, or else it is "merely nominal," but that his subsequent grantees of adjacent lands would or might have a right to insist on the condition (see full discussion by Judge Cooley in 56 Mich.). In the present case it is made to appear that this deed was one of a series of similar ones. Dickinson's addition was platted in 1881, and contained 14 blocks, divided into about 260 lots. It also contained three larger tracts, not subdivided, but called outlots. As we understand the present record, it should be inferred that every deed made by Mr. Dickinson from 1881 until 1895 contained this identical restriction, and that such deeds conveyed about 135 lots. Such restrictions thus became fixed, not only upon the entire of block 1, but upon the entire of block 2, and upon those portions of block 9 nearest block 1. It resulted that block 1 was bounded on the north by the river, on the west (300 feet) by nonrestricted territory not a part of Dickinson's addition, but on the south (600 feet) and on the east (300 feet) by restricted territory. In addition, about half of all the lots to the south and the east within a quarter of a mile were likewise restricted.

By these deeds, the adjacent and nearby lot owners acquired rights to benefits from the condition imposed upon block 1. It is quite clear under the two Smith-Barrie Cases not only that the condition, when imposed, was substantial, not nominal, but also that conveyances of the adjoining land as described did not change the character of the condition and render it "merely nominal."

[7] 7. It is next urged that the condition has become barred by the statute of limitations. This is because this part of block 1 had been used for a lumber and coal yard with docks on the river front for

---

[1] "When any conditions annexed to a grant or conveyance of land are merely nominal and evince no intention of actual and substantial benefit to the party to whom or in whose favor they are to be performed, they may be wholly disregarded; and a failure to perform the same shall in no case operate as a forfeiture of the land conveyed subject thereto."

15 years or more before the date of the contract. We see no reason to doubt that such a use of the property as was clearly inconsistent with the restriction, if sufficiently open and notorious, and if continued for the period of the Michigan statute, would operate to bar the right of re-entry and all dependent rights, as against all persons who would be bound by adverse possession; but whether the use here was of such a character as to set the statute in motion is or may be a question of fact, and if the statute would otherwise have run, the inquiry whether there are persons adversely interested who, for specific reasons, are not bound, is not covered by this record. The burden is on the one refusing the title to show that it is not marketable (Baxter v. Aubrey, 41 Mich. 13, 1 N. W. 897); and, on the other hand, acceptance of a title cannot be compelled, if its validity depends upon the uncertain verdict of a future jury regarding a disputed question of fact (Brokaw v. Duffy, 165 N. Y. 391, 59 N. E. 196). If we undertook to determine finally these questions on the present record, only imperfectly shaped for this purpose, we might be doing great injustice. They should be tried out in the suit at law, and if any equitable relief is needed, it may be that, under the present statute (Judicial Code, § 274 (b) [Act March 3, 1915, c. 90, 38 Stat. 956]), it could be given in that suit.

8. It is said that the condition has been waived and abandoned by everybody concerned. This contention is based on the fact that in 1894 outlot 3 was subdivided into lots, and in 1895 a large part of the original addition remaining unsold was partitioned by Mr. Dickinson among the owners, for whom he was trustee, and that after these dates this restriction was omitted from all further deeds made by the proprietors of the original addition or of lot 3. We infer that, at the time of the partition, there remained unsold about 124 of the small lots on the original addition, and that, as these were afterwards sold by the proprietors who had succeeded Mr. Dickinson, no condition was imposed. Further, considerable portions of the property sold under restriction had been used for years for purposes which might be considered forbidden by the condition, and no lot owner had ever made any objection. Upon this question of abandonment and waiver, as upon that of adverse possession, we think no decision should now be made. The proofs have by no means been exhausted, and the questions are proper for decision in the suit at law. We do not intend to intimate that each of these two questions may not now be upon this record, and may not turn out to be upon the final record, one of law and not of fact.

[8] 9. Block 1, and many other restricted parcels, have been, by the grantees, conveyed by deeds which contained no similar condition and no reference to the condition in the Dickinson deed; and this fact is urged as having, in some way, cured the defect in the title. We do not see how it can have this effect. Obviously a grantee who accepts a deed carrying a condition subsequent cannot free the estate by omitting the condition when he deeds it away. The omission of the condition in so many subsequent deeds as to be general or common may have a bearing on the question of fact whether there has been an

effective abandonment of the condition by those interested in its benefits; but this is the only pertinence the fact has.

[9] 10. It is urged that to enforce the condition permanently is to violate the Michigan statute against perpetuities, which forbids suspension of the power of alienation for more than two lives in being. This contention is based upon a misapprehension of the statute. It does not prohibit the granting of an easement, or the reservation of an analogous interest, for a term without stated limit; the power of alienation is not here suspended, since, if all persons interested join in a deed, a perfect title can be conveyed at any time. Whether or not the result of such a condition as this should be classified as a negative easement existing in connection with a dominant estate in the adjoining lots, certain it is that the right grantors could release all incumbrances.

Several other points are made against the effectiveness of the condition to constitute an incumbrance, but we think the others do not require discussion. It cannot be important whether the Ingersoll Company was really anxious to carry out the contract, if in fact the title was one which it was not bound to accept.

The Ingersoll Company relied upon another supposed defect in the title: It appeared that the city of Mt. Clemens had once received a grant of a right to lay water pipes across block 1, and this right never was formally released by the city until after the status of the parties hereto was fixed by the forfeiture and its acceptance. Whether this apparently outstanding right was really a burden or a benefit, whether it had been in fact abandoned by the city, and whether the benefit or the abandonment was clear enough to make unsubstantial any complaint based on this objection, are questions for the suit at law.

[10] We have said that the equity court had some measure of jurisdiction of this controversy. Ordinarily questions of title are for courts of law, and this court has repeatedly denied the jurisdiction of a court of equity to consider merely legal questions of title. Here, however, is an executory contract of sale which had been placed on record; until it was removed from the record, it constituted a cloud, and this furnished jurisdiction in equity to remove the cloud. We think the court should not have gone further. It is true that under some conditions the jurisdiction of equity, once attached, extends to the whole controversy; but here a suit at law had been first commenced. The questions of marketable title, of adverse possession, and particularly the question of damages were proper for a jury trial. It is not easy to see why the Ingersoll Company was not entitled of right to a jury trial; and in such a situation to permit a bill later filed and based upon a comparatively trifling incident of the situation to oust the jurisdiction of the law court and prevent trial by jury was, we think, an undue expansion of equity powers. Orderly administration required that the main controversy, legal in its nature, should be tried out in the court of law, which had first taken hold of it. Certain objections made against the sufficiency of the title were so clearly untenable that we have thought proper to say so in this case, and in so far end the controversy; but as to others this cannot be said, and they

must be left to the appropriate tribunal. This court cannot apply to this situation section 274 (a) of the Judicial Code.

The decree below is reversed, and the case remanded for further proceedings consistent herewith.