[No. 12616. In Bank. — November 29, 1890.]

JOHN REYNOLDS, Respondent, v. ANTOINE BOREL, Appellant.

VENDOR AND PURCHASER — CONDITIONAL CONTRACT OF SALE — RETURN OF
    DEPOSIT — IMPERFECT ABSTRACT OF TITLE — REFUSAL OF PURCHASER
    TO MAKE TITLE GOOD. — Where a contract for the sale of land was con-
    ditioned that if the title was found imperfect, and could not be made
    good, the deposit made by the purchaser would be returned, and certain
    imperfections were found in the abstract of title, which there was a rea-
    sonable probability might give rise to litigation, and which made the
    title subject to grave doubts, and which the vendor refused to remedy
    or remove or warrant the purchaser against, an action will lie in favor of
    the purchaser to recover the amount of the deposit made by him.
ID. — WHAT CONSTITUTES A GOOD TITLE. — A title to be good should be free
    from litigation, palpable defects, and grave doubts, should consist of
    both legal and equitable titles, and should be fairly deducible of record.
ID. — IMPERFECT TITLE. — A title is not good, within the meaning of the
    foregoing rule, when the records show that a previous deed purporting
    to convey an interest in the land had been made to a person with whom
    the vendor does not connect himself, or when circumstances exist which
    render it possible for creditors of a prior owner of the land to attack a
    conveyance under which the vendor holds.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Sidney V. Smith*, for Appellant.

*George D. Shadburne*, for Respondent.

Per CURIAM. — This action was brought to recover a deposit of money made by the plaintiff, Reynolds, to bind his purchase of land from the defendant, Borel. A part of the contract was, that the plaintiff — the purchaser — should be allowed twenty days from the date of the contract within which to search the title to the property, and if the title was found to be "imperfect, and cannot be made good, said deposit will be returned."

The plaintiff submitted a proper abstract of title to

the land to his attorney, who, within the specified time, pronounced the title imperfect, and objected to it on these grounds:—

" On the fourth day of June, 1880, Eugene Casserly was the owner of the block of land including said land, and on said day conveyed the same to one R. Emmett Doyle in trust for the separate use and benefit of his wife, Theresa Casserly, in consideration of the love and affection he, Casserly, bore to his said wife, and to be conveyed to her in fee-simple as her separate property, by said trustee, whenever thereunto requested by her; and on the fifth day of June, 1880, the said R. Emmett Doyle did convey said block of real property to the said Theresa Casserly by grant, bargain, and sale deed, consideration one dollar; and the title thus conveyed remained in said Theresa Casserly from thence until the twenty-first day of November, 1884, when she conveyed the same to Antoine Borel; but the deeds to Doyle, and from Doyle to Theresa Casserly, aforesaid, were not recorded until January 13, 1884.

" That on the sixth day of February, 1866, John Treat, who claimed to have some interest in said real property, conveyed the same to John Center, who still holds the interest thus conveyed to him.

" That at the time of the conveyances to Doyle and Casserly, aforesaid, to wit, on the fourth and fifth days of June, 1880, said Eugene Casserly was subject to the following debts, claims, judgments, and liabilities: The claim and demand of J. F. Eagan for $15,225, and the claim and demand of Charles Mayne for $1,713.85. And upon these claims and demands actions were brought, judgments obtained, and appeals therefrom taken, without stay bonds or stay of proceedings, effected as follows, viz.:—

"In the fifteenth district court, San Francisco, Eugene Casserly, plaintiff, *v.* McNevin et al., defendants. No. 10227. Action commenced September 28, 1877; judg-

ment entered therein against said Eugene Casserly on May 29, 1883, for the sum of $15,225, and costs, in favor of J. F. Eagan, as intervenor in said action, which judgment was appealed from to the supreme court of California on the seventh day of February, 1834, and was not decided at the commencement of this action.

" An action in the nineteenth district court of San Francisco, entitled Charles Mayne, plaintiff, *v.* Eugene Casserly, defendant. No. 6891. Commenced May 31, 1879, and judgment therein entered on the thirteenth day of February, 1882, against said Eugene Casserly, for $1,713.85, and costs; which judgment was appealed from to the supreme court of the state of California on the twenty-first day of February, 1882, and was not decided at the time of the commencement of this action.

" And said claims, demands, judgments, and liabilities have in no wise been satisfied, vacated, or set aside, and are still in full force and effect against the property and estate of said Eugene Casserly, who died on the fourteenth day of June, 1883. But said defendant, Antoine Borel, purchased said block of land, inclusive of said real property described in plaintiff's complaint, without knowledge of any intent on the part of said Eugene Casserly to defraud his said creditors by the conveyances to said Doyle, and from him to said Theresa Casserly, other than from the record thereof and of the actions aforesaid, and purchased the same for a valuable consideration. That at the time of the conveyances from Casserly to Doyle, and from Doyle to Casserly, aforesaid, and by such conveyances, the block of land aforesaid, bounded by Twenty-fifth Street, Folsom Street, Treat Avenue, and Twenty-sixth, Street, including the property in question, was transferred to said Theresa Casserly.

" That upon the demise of said Eugene Casserly, his estate was appraised by the appraisers thereof at the sum of $12,091.46."

These imperfections were duly reported to the defend-

ant, and a demand made that they be removed and the title made good, or that the defendant warrant the same against all demands, which being refused by the defendant, the plaintiff demanded the return of his deposit of $360, with which the defendant refused and still refuses to comply. The court below gave judgment for the plaintiff, from which, and an order denying a new trial, the defendant appeals.

There is nothing in the record to explain the claim of John Center to an interest in the land beyond the allegations of the complaint and the finding of the court that at the time Eugene Casserly conveyed this property to R. Emmett Doyle, and Doyle to Mrs. Casserly, " one John Treat, who claimed to have some interest in said real property, conveyed the same to John Center, who still holds the interest thus conveyed to him."

As it seems to us, this fact existing with reference to a title would not constitute it free from reasonable doubt, or make it improbable that litigation might grow out of it. Again, there is a state of facts presented from which a prudent man might infer that at the time Eugene Casserly made this conveyance to Doyle he was not able to pay his debts; for a conveyance is made in trust to Doyle, who carries out the trust the next day by making a deed to Mrs. Casserly. These deeds were delayed to be recorded for several years, until after Eugene Casserly's death. Meanwhile, certain large judgments which were rendered in suits brought before his death are in existence unstayed, but on appeal, and unpaid, which amount to more than the value of Casserly's whole estate at his death. Can it be said that, under this condition of things (even admitting that the defendant here knew nothing but the fact that these judgments were existing and unsatisfied at the date of his purchase, and the *delay* of recording the deeds from Casserly to Doyle, and Doyle to Mrs. Casserly), these judgment creditors will not hereafter probably commence litigation with

Borel as to his title to the premises, if they have not already done so? We think not. As it seems to us, it is very doubtful but what they may litigate. Is, then, the plaintiff here to be required to take the title of Borel as a perfect one, when this sort of reasonable doubt exists?

"A perfect title must be one that is good and valid beyond all reasonable doubt. Whether the particular title is good or not is a question which it is often difficult to determine, and one upon which the lawyers and judges sometimes disagree." (*Turner* v. *McDonald*, 76 Cal. 179.)

A title to be good "should be free from litigation, palpable defects, and grave doubts, should consist of both legal and equitable titles, and should be fairly deducible of record." (*Turner* v. *McDonald*, 76 Cal. 180.)

It seems to us, under the facts of this case, and the refusal of the defendant to warrant the title, the plaintiff here was warranted in considering the title imperfect and subject to grave doubts.

For the foregoing reasons, the judgment and order are affirmed.