OGG, RESPONDENT, *v.* HERMAN ET AL., APPELLANTS.

(No. 5,465.)

(Submitted May 26, 1924.  Decided June 17, 1924.)

[227 Pac. 476.]

*Real Property—Vendor and Purchaser—Specific Performance
—"Good Title"—Defects in Title—Federal Patents—Reser-
vations—Building Restrictions—Executory Contracts Ter-
minable by Mutual Consent — Pleading — Counterclaims —
Sufficiency—Contracts—Construction.*

Pleading—Counterclaim—When Proof Against General Demurrer or Motion
to Strike.
   1.  If an answer states a defense or counterclaim upon any admis-
sible theory it is proof against a general demurrer or motion to strike.

[71 Mont. 10.]

Contracts—When Different Agreements to be Construed Together.
2. A contract for the sale of real estate and an escrow agreement executed contemporaneously and referring to the same subject matter must be construed together and as one instrument.

Real Property—Vendor and Purchaser—"Good Title"—Definition.
3. Where the vendor contracts to furnish an abstract showing a clear, good and merchantable title to the real property sold by him, the terms "clear," "good" and "merchantable" *held* synonymous and to mean a title free from encumbrances, palpable defects, and grave doubts, comprising both legal and equitable titles, and fairly deducible of record.

Reformation of Instruments—Mistake to be Ground for Reformation must be Material.
4. A mistake to be ground for the reformation of an instrument must be material, that is, one which will affect substantially the rights and obligations of the parties.

Real Property—Good Title—When Purchaser Bound to Accept Title Offered.
5. Where a party contracts to furnish a good and marketable title to real estate and furnishes one to which there is no reasonable objection—such a title as a reasonable man should have been satisfied with—the purchaser may not arbitrarily repudiate the contract by saying that it is unsatisfactory to him, but, if he ought to be satisfied with it, he is bound to accept it.

Same—Abstract Showing Good Title—Extent of Obligation of Vendor.
6. A contract to furnish an abstract showing a clear title in the vendor means that he must show in the first instance a title free from doubt so far as disclosed by the records.

Same—Reservations in United States Patent to Land Held not Defect in Title.
7. Reservations in a federal patent to town-site lots making the grant subject to vested and accrued water rights, ditches, *etc.*, *held* not to constitute such encumbrances as to prevent the vendor from furnishing an abstract showing a clear title.

Same—Building Restrictions—When not Defect in Title.
8. A building restriction with reference to the use of a town lot, no longer enforceable at the time a vendor is required to furnish an abstract of title, does not affect the marketability of the title.

Same—Specific Performance—Answer Setting Up Building Restriction Insufficient to Show Defect in Title to Land Sold.
9. In an action for the specific performance of a contract of purchase of real property, in which the answer alleged that the vendor had failed to furnish a good title, the abstract showing that the premises could not be used for certain purposes for a given number of years, *held* that the answer, in the absence of an averment that the restrictions had not been released or that the abstract failed to disclose a release, was insufficient to show that the vendor had not furnished an abstract showing good title or to raise an issue upon plaintiff vendor's allegation that he had furnished such an abstract.

---

3. What constitutes a "satisfactory title" within contract employing that term, see notes in 8 **Ann. Cas.** 273; **Ann. Cas.** 1915C, 536, 18 **L. R. A.** (n. s.) 741.
What is a marketable title, see note in 38 **L. R. A.** (n. s.) 1.

Same—Executory Contract of Sale Terminable by Mutual Consent.
10.  The parties to an executory contract of sale of real property
may terminate it by mutual consent independently of any provision
in the contract permitting them to do so; hence an allegation in de-
fendant's answer to a complaint for the specific performance of the
contract that plaintiff had informed him that if the abstract furnished
was not satisfactory the deal would be called off, and that he ac-
cepted the offer to terminate the contract, was sufficient to show a
mutual rescission of the contract, a good defense, and was proof
against a general demurrer and motion to strike.

*Appeal from District Court, Fergus County; Rudolf Von Tobel, Judge.*

Suit by Albert W. Ogg against J. C. Herman and another. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

*Messrs. Belden & DeKalb* and *Mr. Merle C. Groene,* for Appellants, submitted a brief; and one in reply to that of Respondent; *Mr. O. W. Belden* argued the cause orally.

Mutual mistake: *Parchen* v. *Chessman,* 49 Mont. 338, 142 Pac. 631, 146 Pac. 469; *Cox* v. *Hall,* 54 Mont. 162, 168 Pac. 519; *Hoskins* v. *Scottish Union etc. Co.,* 59 Mont. 50, 195 Pac. 837; *Comerford* v. *United States F. & G. Co.,* 59 Mont. 243, 196 Pac. 984; Pomeroy's Equity Jurisprudence, sec. 870.

Mutual rescission and abandonment: *Tompkins* v. *Davidow,* 27 Cal. App. 327, 149 Pac. 788; *Sarnighausen* v. *Scannell,* 11 Cal. App. 652, 106 Pac. 117; 6 Cal. Jur. 382; 13 C. J. 600; sec. 7565, Rev. Codes 1921.

The defects in the title: *Robert* v. *Bassett,* 105 Mass. 409; *McMillan* v. *Anderson,* 95 U. S. 37, 24 L. Ed. 335 [see, also, Rose's U. S. Notes]; *Koeffler* v. *Koeffler,* 185 Ill. 261, 56 N. E. 1094; *Adams* v. *Reed,* 11 Utah, 480, 40 Pac. 720; *State* v. *Alter,* 80 Neb. 405, 114 N. W. 293; *Alpha Portland Cement Co.* v. *Slirk,* 227 Fed. 966; *Eller* v. *Newell,* 159 Iowa, 711, 141 N. W. 52; *Kennedy* v. *Denstadt,* 31 N. D. 422, 154 N. W. 271; *Danzer* v. *Moerschel* (Mo.), 214 S. W. 849; *Henderson* v. *Daniels,* 62 Mont. 363, 205 Pac. 964; *Bell* v. *Stadler,* 31 Idaho, 568, 174 Pac. 129.

Encumbrances: *Fraser* v. *Bental*, 161 Cal. 390, Ann. Cas. 1913B, 1062, 119 Pac. 509; *Farrington* v. *Tourtlott*, 39 Fed. 738; *Mackey* v. *Harmon*, 34 Minn. 168, 24 N. W. 702; *Prescott* v. *Truman*, 4 Mass. 627, 3 Am. Dec. 246; *Speakman* v. *Forepaugh*, 44 Pa. St. 371; *Batley* v. *Foerderer*, 162 Pa. St. 460, 29 Atl. 868; *Garnett* v. *Macon*, Fed. Cas. No. 5245.

Reservations: *Nacey* v. *Cheney* (Mont.), 214 Pac. 647; *Cosby* v. *Danziger*, 38 Cal. App. 204, 175 Pac. 809, *Adams* v. *Henderson*, 168 U. S. 573, 42 L. Ed. 584, 18 Sup. Ct. Rep. 179 [see, also, Rose's U. S. Notes]; *Wingard* v. *Copeland*, 64 Wash. 214, 116 Pac. 671.)

Abstract of title: *Smith* v. *Taylor*, 82 Cal. 533, 23 Pac. 217; *Howe* v. *Coates*, 97 Minn. 385, 114 Am. St. Rep. 723, 4 L. R. A. (n. s.) 1170, 107 N. W. 397; *Fagan* v. *Hook*, 134 Iowa, 381, 105 N. W. 155.

*Mr. R. H. Wiedman,* for Respondent, and *Messrs. Cheadle & Cheadle,* of Counsel, submitted a brief; *Mr. Wiedman* argued the cause orally:

Mutual mistake: *Cox* v. *Hall*, 54 Mont. 154, 168 Pac. 519; *American Mining Co.* v. *Basin etc. Co.*, 39 Mont. 476, 24 L. R. A. (n. s.) 305, 104 Pac. 525; *Mills* v. *Lewis*, 55 Barb. (N. Y.) 179; *Forester* v. *Van Auken*, 12 N. D. 175, 96 N. W. 301; *Bishop* v. *Brown*, 51 Vt. 330; 34 Cyc. 970, 971, 974.

Rescission: *Wood* v. *Carpenter*, 101 U. S. 135, 25 L. Ed. 807 [see, also, Rose's U. S. Notes]; *Streicher* v. *Murray*, 36 Mont. 45, 92 Pac. 36; *Turk* v. *Rudman*, 42 Mont. 1, 111 Pac. 739; *Ott* v. *Pace*, 43 Mont. 82, 115 Pac. 37; *Fratt* v. *Daniels-Jones Co.*, 47 Mont. 487, 133 Pac. 700; *Kavanaugh* v. *Flavin*, 35 Mont. 133, 88 Pac. 764; *American etc. Co.* v. *Basin etc. Co.*, *supra*.

Defects in the title—Reservations—Encumbrances: 3 Devlin on Real Estate, p. 3661; *Gill* v. *Wells*, 59 Md. 492; *Miller* v. *Cramer*, 48 S. C. 282, 26 S. E. 657; *Sisk* v. *Caswell*, 14 Cal. App. 377, 112 Pac. 185; *Stuhr* v. *Butterfield*, 151 Iowa, 736, 36 L. R. A. (n. s.) 321, 130 N. W. 897; *Schurger* v. *Moorman*, 20 Idaho, 97, Ann. Cas. 1912D, 1114, 36 L. R. A. (n. s.) 313, 117

Pac. 122; *Whitbeck* v. *Cook*, 15 Johns. (N. Y.) 483, 8 Am. Dec. 272; *Ireton* v. *Thomas*, 84 Kan. 70, 32 L. R. A. (n. s.) 737, 113 Pac. 306; *Newmyer* v. *Roush*, 21 Idaho, 106, Ann. Cas. 1913D, 433, 120 Pac. 464.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was instituted by the plaintiff to enforce the specific performance of a contract for the sale of real estate.

On January 25, 1921, plaintiff and defendants entered into a contract in writing, by the terms of which plaintiff agreed to sell to defendants, and defendants agreed to purchase from plaintiff, lots 4 and 5, block 10, original town site of Winnett. The contract provided that plaintiff should convey the premises "in fee simple, free of all encumbrances whatever" by a good and sufficient warranty deed, and should furnish an abstract showing "good and merchantable title in the grantor." The contract and defendants' checks were deposited in escrow with the First National Bank of Winnett under an agreement in writing that, if the abstract furnished disclosed a clear title in plaintiff, the checks should be delivered to him and the contract to the defendants; but, if "clear title cannot be furnished," the checks should be returned to defendants and the contract to plaintiff.

It is alleged in the complaint that plaintiff fully complied with all the terms of the contract by him to be kept or performed; that he furnished to defendants an abstract "showing good and merchantable title in the plaintiff"; that he executed a warranty deed conveying the lots to defendants "in fee simple, clear of all encumbrances," and tendered the deed to defendants, but that they refused to accept it or to pay the purchase price, and have demanded that the bank return the checks to them. In their answer defendants denied that the abstract submitted by plaintiff disclosed in him a clear title, good title or merchantable title, or that the property was free from encumbrances, and alleged that the abstract disclosed affirmatively certain defects in the title, which were set forth

at length. They also undertook to plead mutual mistake and termination of the contract. To this answer the plaintiff interposed a general demurrer, and at the same time moved to strike the allegations which set forth the alleged defects in the title, the mutual mistake, and the termination of the contract. The minutes of the court recite: "The demurrer is by the court sustained and the motion to strike is granted." The defendants, refusing to plead further, suffered judgment to be entered against them and appealed therefrom.

It is unnecessary to discuss the question of practice presented. If the matters attacked by the motion to strike be eliminated, the answer does not state a defense or counterclaim, and under the circumstances the motion and demurrer raised [1] the same objection. It is elementary that, if the answer stated a defense or counterclaim upon any admissible theory, it was proof against a general demurrer, and in this instance it was likewise immune to attack by the motion to strike. In determining whether a defense or counterclaim was stated, we shall consider in their order the following subjects: Mutual mistake, defects in the title and termination of the contract..

1. It is alleged in the answer that the actual agreement between the parties was that the abstract should disclose in plaintiff a title satisfactory to the defendants, but by mutual mistake those terms were omitted from the writings and the terms employed substituted.

The contract to purchase and sell and the escrow agreement [2] were executed contemporaneously and refer to the same subject matter; hence they will be construed together and as one instrument. While provision is made that plaintiff shall [3] furnish an abstract showing clear title, good title and merchantable title, it is apparent that these terms were used interchangeably, and they are in fact synonymous. A clear title means that the land is free from encumbrances. (*Roberts* v. *Bassett,* 105 Mass. 409.) A good title is one free from litigation, palpable defects and grave doubts, comprising both legal and equitable titles, and fairly deducible of record. (*Turner* v. *McDonald,* 76 Cal. 177, 9 Am. St. Rep. 189, 18 Pac. 262;

*Reynolds* v. *Borel,* 86 Cal. 538, 25 Pac. 67.) A clear title means a good title (*Oakey* v. *Cook,* 41 N. J. Eq. 350, 7 Atl. 495), and a good title means a marketable or merchantable title (*Irving* v. *Campbell,* 121 N. Y. 353, 8 L. R. A. 620, 24 N. E. 821). A contract to convey in fee simple, clear of all encumbrances, implies a marketable title (*Bell* v. *Stadler,* 31 Idaho, 568, 174 Pac. 129), and a marketable title is one of such character as assures to the purchaser the quiet and peaceable enjoyment of the property and one which is free from encumbrances (*Barnard* v. *Brown,* 112 Mich. 452, 67 Am. St. Rep. 432, 70 N. W. 1038).

A mistake to be ground for reformation must be material; [4] that is, one which will affect substantially the rights and obligations of the parties. (23 R. C. L. 321.) In our judgment, the contract as written secures to the defendants everything to which they would be entitled if the reformation demanded were granted; hence it follows that the answer does not disclose that the defendants are entitled to have the contract reformed.

Decided cases may be found, among them *Liberman* v. *Beck-* [5] *with,* 79 Conn. 317, 8 Ann. Cas. 271, 65 Atl. 153, which apparently hold that an executory contract, providing that the title to the land intended to be conveyed shall be satisfactory to the purchaser, is to be construed to give to the purchaser an arbitrary right to repudiate the contract on the ground that the title, though perfect, is unsatisfactory to him, provided only that his dissatisfaction is honest. We decline to follow those cases. In our judgment common sense dictates the rule that a title satisfactory to the purchaser means a title to which there is no reasonable objection—such a title as a reasonable man should have been satisfied with; and, if the title is good and valid without reference to extrinsic evidence, the purchaser, as a reasonable man, should be satisfied with it, and should not be permitted to say that he is dissatisfied and thus avoid the contract, because, perchance, he has become tired of his bargain. We approve the rule announced in *Duplex Safety Boiler Co.* v. *Garden,* 101 N. Y. 387, 54 Am. Rep.

709, 4 N. E. 749, as follows: "That which the law will say a contracting party ought in reason to be satisfied with, that the law will say he is satisfied with."

In *Folliard* v. *Wallace*, 2 Johns. (N. Y.) 395, Chancellor Kent said: "A simple allegation of dissatisfaction, without some good reason assigned for it, might be a mere pretext, and cannot be regarded. If the defendant were left at liberty to judge for himself when he was satisfied, it would totally destroy the obligation, and the agreement would be absolutely void. * * * The law in this case will determine for the defendant when he ought to be satisfied."

In *Moot* v. *Business Men's Inv. Assn.*, 157 N. Y. 201, 45 L. R. A. 666, 52 N. E. 1, it was said: "A good title must be regarded as a satisfactory one."

In *Fagen* v. *Davison*, 9 N. Y. Super. Ct. 153, it was said: "A title, satisfactory to the party to whom it is to be given means a title to which there is no reasonable objection, and with which therefore the party to whom it is tendered ought to be satisfied. When such is its nature, so far from having a discretion to reject, he is bound to accept it."

In support of our views, reference is made to the following additional authorities: *Pennington* v. *Howland*, 21 R. I. 65, 79 Am. St. Rep. 774, 41 Atl. 891; *Latrobe* v. *Winans*, 89 Md. 636, 43 Atl. 829; *Dillinger* v. *Ogden*, 244 Pa. 20, Ann. Cas. 1915C, 533, 90 Atl. 446; *Whited* v. *Calhoun*, 122 La. 100, 47 South. 415; *Dean* v. *Williams*, 56 Wash. 614, 106 Pac. 130; *Giles* v. *Paxson* (C. C.), 40 Fed. 283; *Winter* v. *Stock*, 29 Cal. 408, 89 Am. Dec. 57; 27 R. C. L. 487, and note to Ann. Cas. 1915C, 536.

2. It is alleged in the answer that the abstract disclosed that title to the lots in question was secured originally from [6, 7] the United States by Walter J. Winnett, and that the patent conveyed the land "subject to any vested and accrued water rights for mining, agricultural, manufacturing or other purposes, and rights to ditches and reservoirs used in connection with such water rights as may be recognized and acknowledged by local customs, laws, and decisions of courts,

and also subject to the right of the proprietor of a vein or lode to extract and remove his ore therefrom, should the same be found to penetrate or intersect the premises hereby granted.'' It is also alleged that the abstract disclosed that these lots were once owned by the Milwaukee Land Company, which conveyed them to Herbert F. Kuehl, a predecessor in interest of this plaintiff, by a deed which contained the following provision: ''The premises hereby conveyed shall never be used for the carrying on of the business of a livery stable, blacksmithing, carpenter or wagon shop during the term of five years from and after July 18, 1914.''

With respect to the reservations contained in the Winnett patent it is sufficient to say that they refer only to rights existing at the time Winnett became entitled to the patent; that when the patent issued it covered everything embraced in the land to which a prior right had not attached, and passed the entire title as against any subsequently acquired right. (*Pacific Coast M. & M. Co.* v. *Spargo* (C. C.), 16 Fed. 348.)

The abstract is not before us in its entirety. Plaintiff alleged that it disclosed clear title in him, and, so far as the present question is concerned, the only denial is found in the counter allegation that it disclosed the reservations in the patent quoted above. The contract to furnish an abstract showing a clear title in plaintiff means that plaintiff must show in the first instance a title free from doubt so far as disclosed by the records. (Maupin on Marketable Titles to Real Estate, 3d ed., sec. 295.) Since the reservations in the patent do not of themselves constitute encumbrances on the lots, we conclude that plaintiff fulfilled the terms of his contract so far as disclosed by the record.

The reservations contained in the patents considered in *Nacey* v. *Cheney*, 67 Mont. 56, 214 Pac. 647, were so far different from the reservations now under review that the decision in that case has no application here.

The reservation in the deed from the Milwaukee Land Com-
[8]  pany to Kuehl presents an example of a common building

restriction covenant. It is the general rule that "a building or other restriction as to the use of the land which will bind the land in the hands of the purchaser either at law or in equity, and which lessens the value of the land for general purposes, is regarded as a defect in the vendor's title, giving the purchaser the right to reject the title and depriving the vendor of the right to compel the purchaser to perform, where the vendor is under an obligation to make a good title free and clear of incumbrances." (27 R. C. L., sec. 234. See, also, note to 38 L. R. A. (n. s.) 34; 39 Cyc. 1499; Maupin on Marketable Titles to Real Estate, p. 853.)

It follows, of course, that the marketability of a title is not **[9]** affected by a restrictive building covenant no longer enforceable at the time the abstract is rejected. But, assuming that this covenant was enforceable until the expiration of eight years (the period of the statute of limitation) from July 18, 1919, it could be released, and there is not any allegation in the answer that it was not released or that the abstract failed to disclose a release; on the contrary, it is alleged in the answer that the abstract as first furnished was returned to plaintiff for correction, and before it was finally rejected "it showed the same reservations in the patent." As indicated above, the abstract is not before us, and in our judgment the allegations of the answer are insufficient to show that plaintiff failed to furnish such an abstract as was contemplated by the contract or to raise an issue upon the plaintiff's allegations that he did furnish such abstract.

3. It is alleged in the answer that, when the abstract was first furnished to defendants, they returned it to the plaintiff with a statement setting forth particularly their objections to it and a request that it be corrected; that plaintiff refused to have the corrections made and informed the defendants that, if they were not satisfied with the abstract as then presented, the bank would be instructed to return the checks to them; that on March 29, 1921, defendants availed themselves of and accepted this offer to terminate the contract, and "at that time

it was agreed by and between the plaintiff and the defendants that the said contract should be waived, abandoned, and rescinded, and the plaintiff and the defendants then waived, abandoned, and rescinded the same."

The right of the parties to an executory contract to terminate [10] it by mutual consent exists independently of any provision in the contract permitting them to do so. (Subd. 5, sec. 7565, Rev. Codes 1921; 39 Cyc. 1353; *Ashley* v. *Cathcart,* 159 Ala. 474, 49 South. 75.) It is immaterial whether the termination be characterized as abandonment, cancellation, mutual rescission or waiver; the effect is the same: to discharge the parties from the obligations previously assumed. (13 C. J. 600.)

In Maupin on Marketable Title to Real Estate, section 234, it is said: "The parties may at any time before conveyance rescind the contract by consent, which consent may be express or implied from the acquiescence of the one party in the acts of the other."

In *Mahon* v. *Leech,* 11 N. D. 181, 90 N. W. 807, the court said: "That the mutual rights and obligations of the parties to a written contract for the purchase and sale of real estate may be waived, and the contract annulled and extinguished by parol, is well settled."

In *Lasher* v. *Loeffler,* 190 Ill. 150, 60 N. E. 85, the court said: "A party demanding that a court of chancery shall exercise its jurisdiction to enforce the specific performance of a contract must show he has himself always been ready, willing and eager to perform the contract on his part, and he cannot have a decree for specific performance if it is made to appear he has consented to a rescission of the contract or has abandoned it."

The answer sets forth facts sufficient to show mutual rescission of the contract, and this constitutes a good defense; hence the answer was proof against the general demurrer and the motion to strike the allegations setting forth the rescission.

For the reason given, the judgment is reversed and the cause is remanded for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.