CLARENCE G. BLISS, RECEIVER, APPELLEE, V. H. F. SCHLUND ET AL., APPELLANTS.

FILED MAY 11, 1932. No. 28221.

*Cleary, Suhr & Davis,* for appellants.

*G. W. Irwin* and *T. F. Neighbors, contra.*

Heard before Goss, C. J., Rose, Dean, Eberly, Day and Paine, JJ., and Ryan, District Judge.

Paine, J.

This is a suit brought by the vendor to enforce the specific performance of a contract for the sale of real estate, and, in case of nonperformance, for a decree that the premises be sold and the proceeds applied upon the contract and a deficiency judgment entered for the balance, if any, due thereon. At the conclusion of the trial in the district court, the plaintiff and appellee had judgment, and the defendants were ordered, in the decree filed September 30, 1931, to accept the deed and the title as shown by the abstract, and pay the amount due, $1,-597.30. Notice of appeal was filed October 12, 1931.

It appears that the Nebraska State Bank of Bridgeport, at the time it was taken over by the department of trade and commerce, on April 10, 1928, was the owner of 939.36 acres in Morrill county, Nebraska, and that upon October 1, 1928, the guaranty fund commission, which was in charge of the bank, sold the above real estate, by a written contract, to H. F. Schlund, of St. Michael, Nebraska, for $7,828, of which $500 was paid in cash, and the vendee was to assume a mortgage thereon of $6,000, and the balance was to be paid on or before the day of final settlement. H. F. Schlund, the vendee, is the father of Charles Schlund, and the son, immediately after the execution and delivery of the contract, took possession of said real estate, lived thereon, and received the income therefrom. The contract provided that final settlement should be made on or before November 1, 1928, "or as soon thereafter as title is shown to be merchantable." It further provides if "the title is not shown to be merchantable, then this contract shall not be binding upon first party, and shall be of no force or effect."

Clarence G. Bliss, as receiver of the Nebraska State Bank of Bridgeport, filed his petition July 23, 1930, alleging that the guaranty fund commission had duly per-

formed all the conditions of said contract, had tendered to H. F. Schlund and Charles Schlund an abstract of title, showing a good and merchantable title to said real estate, together with a warranty deed conveying said premises to the vendees, and praying for an accounting of the amount due under the contract and other relief as set out above. Prior to the time of trial in the district court, all of the remaining assets of said bank, including this cause of action, were sold to H. K. Tiller, who is the real party in interest, and who has been substituted as party plaintiff and appellee. The appellants asked for a reversal in this court for the reason that the title tendered by the plaintiff was not merchantable and therefore the court erred in requiring the appellants to accept a warranty deed and pay the balance due on the contract when the title was defective, as shown by the abstract.

It appears at entry No. 18 of the abstract, introduced in evidence, that upon September 24, 1919, Thirza C. Ely and husband gave a real estate mortgage for $18,000 upon the real estate in litigation to Moses P. Hatch and Nevada D. Hatch, who was his wife, and upon September 3, 1929, being unable to pay said mortgage, the above mortgagors gave a warranty deed to M. P. Hatch, and no release of this mortgage appears in the abstract.

At entry No. 22 of the abstract, it is shown that a sheriff's deed was given to the Nebraska State Bank of Bridgeport, said sheriff's deed being given after an execution sale under a judgment rendered March 16, 1925, against M. P. Hatch, but not against Nevada D. Hatch.

Up to this point there is little dispute about the facts in the case, and the question is now presented to this court for determination whether the sheriff's deed under execution sale, to which Nevada D. Hatch was not a party, conveyed her ownership of the undivided one-half interest in the $18,000 mortgage which she held upon the land, as set out above, and which mortgage is unreleased of record. Appellants claim that her interest in that mortgage was her own separate property; that it could not be

taken from her by an execution sale on a judgment secured against her husband, to which she was not a party, and that the proceedings by which the judgment was obtained against her husband could not affect her undivided one-half interest in the mortgage, and the fact that she claimed that her husband's equity in the land was the family homestead does not invalidate her claim to an undivided one-half interest in the $18,000 mortgage, which has never been released.

Moses P. Hatch, by taking back a deed to the land from the mortgagors, had his interest in the mortgage merged in the fee title, which he thereupon acquired. *McLaughlin v. Nelson,* 113 Neb. 308. But, would this fact extinguish the mortgage interest which Nevada D. Hatch owned in the land? It is contended that this half interest in the $18,000 mortgage belonging to Nevada D. Hatch, which has never been released, would not become barred by the statute of limitations until March 1, 1935. If the appellants are compelled by the order of the district court to accept the title, what defense would they have to an action by Nevada D. Hatch to foreclose her one-half interest in the unreleased mortgage?

■ The appellee contends that a title, to be good and merchantable, need not be beyond the possibility of attack, citing *McLaughlin v. Nelson,* 113 Neb. 308, and insists that, as the appellants took possession of the land, and retained possession after they had knowledge of the defect, they will be held to have waived such defect. *Schlake v. Healey,* 108 Neb. 35; *Pollard v. Larson,* 115 Neb. 136.

It is admitted that appellants were in possession of the land from April 1, 1929, to March 1, 1931, and that this suit was brought upon July 23, 1930, while Charles Schlund was living upon the land, and that appellants have retained the rents and profits of the land for practically two years.

The evidence showed that the vendor made effort to correct title after it was first submitted to the vendees upon October 13, 1928, and was resubmitted upon March.

20, 1931, and it was not until the abstract was last submitted to them that defendants knew that the title had not been perfected, and defendants surrendered possession of the land March 1, 1931.

In *Schlake v. Healey, supra,* it will be noted that the evidence showed good record title in vendor at the time of the trial and the decree, and that vendee was in possession, and that in the case of *Pollard v. Larson, supra,* the vendor perfected the title before the trial.

In the case at bar, the appellants have never renounced the contract of purchase, and have always been ready and willing to carry it out, and, if given a warranty deed with a merchantable title, held themselves ready to pay the balance due, and the prayer of their answer, as filed in this case, is for specific performance against the plaintiff of the contract. This would indicate that the authorities which apply in the case of a rescission by the vendee cannot be applied as the rule in this case.

In the contract itself it provided an unlimited time for the vendor to perfect his title and make it merchantable, and also provided that the vendees were to take possession on March 1, 1929, and, therefore, such possession would not be a waiver of defects apparent in the title. 39 Cyc. 1524; 27 R. C. L. 513, sec. 240; *Read v. Loftus,* 82 Kan. 485, 31 L. R. A. n. s. 457; *Lillienthal v. Bierkamp,* 133 Ia. 42; *Jones v. Taylor,* 7 Tex. 240, 56 Am. Dec. 48.

■ "A clear title means that the land is free from incumbrances. *Roberts v. Bassett,* 105 Mass. 409. A good title is one free from litigation, palpable defects and grave doubts, comprising both legal and equitable titles, and fairly deducible of record. *Turner v. McDonald,* 76 Cal. 177, 9 Am. St. Rep. 189, 18 Pac. 262; *Reynolds v. Borel,* 86 Cal. 538, 25 Pac. 67. A clear title means a good title (*Oakey v. Cook,* 41 N. J. Eq. 350, 7 Atl. 495), and a good title means a marketable or merchantable title (*Irving v. Campbell,* 121 N. Y. 353, 8 L. R. A. 620, 24 N. E. 821). A contract to convey in fee simple, clear of all incumbrances, implies a marketable title (*Bell v. Stadler,* 31 Idaho, 568,

174 Pac. 129), and a marketable title is one of such character as assures to the purchaser the quiet and peaceable enjoyment of the property and one which is free from incumbrances (*Barnard v. Brown,* 112 Mich. 452, 67 Am. St. Rep. 432, 70 N. W. 1038)." *Ogg v. Herman,* 71 Mont. 10.

It has been held that a merchantable title need not be free from every technical defect, but the test is whether a man of reasonable prudence, familiar with the facts and the questions of law involved, would, in the ordinary course of business, accept such a title as one which could be sold to a reasonable purchaser. *Cappel v. Potts,* 192 Ia. 661.

The terms "marketable" and "merchantable" title are practically synonymous, and mean a title in which there is no doubt involved, either as to matter of law or fact, and a purchaser who contracts for a marketable title will not be required to take it if there be color of outstanding title and he may encounter the hazards of litigation. *Hess v. Bowen,* 237 Fed. 510; *Eaton v. Blackburn,* 49 Or. 22; *Dalzell v. Crawford,* 1 Pars. Eq. Cas. (Pa.) 37, 45; *Herman v. Somers,* 158 Pa. St. 424, 38 Am. St. Rep. 851; *Ormsby v. Graham,* 123 Ia. 202.

The appellants point out another defect in this title. It is shown by exhibit C, attached to the abstract, that Moses P. Hatch died June 23, 1927, an inmate of State Hospital at Ingleside. It is shown by exhibit A, attached, that the alias execution under the judgment against him was issued after his death, and that upon September 17, 1927, the sheriff levied upon the land as the property of M. P. Hatch, the land was advertised and sold, and the sale confirmed, without any revivor of the judgment in the name of the heirs of M. P. Hatch. In view of the holding of this court in *Dougherty v. White,* 112 Neb. 675, "After the death of a judgment debtor, an execution cannot be lawfully issued and levied on the real estate, of which he died seised, until the judgment has been revived against the persons who took title to the real estate either by operation of law or as devisees." It clearly appears that in the case at bar there was no such revivor.

As to the rents and profits received by the appellants before vacating the premises, it is claimed that they would about equal the $500 advance payment made by appellants upon the purchase of the land.

In the opinion of the court, the title submitted by the vendor was not a merchantable title and the district court erred in requiring the appellants to accept the deed thereto. The judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.